IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID AGUIRRE, individually and on behalf of those similarly situated, | § § § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-2611 |
| | § | |
| TASTEE KREME #2, INC., and VAHID KARAMI, | § § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM, RECOMMENDATION, AND ORDER**</u>

Pending before the court[1] is Plaintiff David Aguirre's ("Plaintiff") Motion for Conditional Certification (Doc. 22). The court has considered the motion, Defendants Tastee Kreme #2, Inc. ("Tastee Kreme") and Vahid Karami's ("Karami") (collectively, "Defendants") response (Doc. 27), Plaintiff's reply (Doc. 30), Defendants' objections to Plaintiff's proposed notice (Doc. 28), all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion to certify class be **GRANTED**.

## I. Case Background

Plaintiff filed this action against Defendants under the Fair Labor Standards Act ("FLSA").[2] Plaintiff alleged that Defendants

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. <u>See</u> Doc. 7, Ord. Dated Aug. 31, 2016.

[2] <u>See</u> Doc. 14, Pl.'s 1st Am. Compl.

wrongfully classified him and other similarly situated employees as exempt from overtime requirements.[3]

## A.   <u>Factual Background</u>

Tastee Kreme is in the business of selling ice cream to gas stations and convenience stores.[4]  Karami works for Tastee Kreme in the Houston area as the director of operations, owner, and manager.[5]

Tastee Kreme employed ice cream delivery drivers or route drivers ("delivery drivers") who were assigned to specific routes and whose responsibilities included delivering ice cream, cleaning freezers, restocking ice cream, creating invoices, obtaining payment from customers for the deliveries, and maintaining, restocking, and washing their trucks.[6]  Sometimes delivery drivers were called upon to do "hot shot" deliveries, which were deliveries that had to be completed immediately.[7]  In order to complete these "hot shot" deliveries, the delivery driver had to leave his route or make a delivery after the route list was complete to restock ice

---

[3]     See id. p. 1.

[4]     See Doc. 22-1, Ex. 1 to Pl.'s Mot. to Certify Class, Decl. of Aguirre ¶ 3.

[5]     See Doc. 27-1, Ex. A to Defs.' Resp. ¶ 2.

[6]     See Doc. 22-1, Ex. 1 to Pl.'s Mot. to Certify Class, Decl. of Aguirre ¶¶ 4-5; Doc. 22-2, Ex. 2 to Pl.'s Mot. to Certify Class, Decl. of Jorge A. Fernandez ¶¶ 3, 8; Doc. 22-3, Ex. 3 to Pl.'s Mot. to Certify Class, Decl. of Joventino Machado ¶ 5.

[7]     See Doc. 22-2, Ex. 2 to Pl.'s Mot. to Certify Class, Decl. of Jorge A. Fernandez ¶ 6; Doc. 22-3, Ex. 3 to Pl.'s Mot. to Certify Class, Decl. of Joventino Machado ¶ 10.

cream for the customer.[8]  Plaintiff and the two opt-in plaintiffs
who submitted declarations in support of this motion were employed
by Tastee Kreme as delivery drivers.[9]

At the beginning of each work day, Tastee Kreme gave the
delivery drivers a route list mapping out their route for ice cream
deliveries that day.[10]  The delivery drivers would return to the
warehouse at the end of the day after they completed their routes.[11]
In February 2016, Tastee Kreme began keeping track of the delivery
drivers hours, requiring them to clock in and out at the beginning
and end of each day.[12]

The delivery drivers regularly worked over forty hours a week
with no overtime and, up until February 2016, were paid a base

---

[8]     See Doc. 22-2, Ex. 2 to Pl.'s Mot. to Certify Class, Decl. of Jorge
A. Fernandez ¶ 6; Doc. 22-3, Ex. 3 to Pl.'s Mot. to Certify Class, Decl. of
Joventino Machado ¶ 10.

[9]     See Doc. 22-1, Ex. 1 to Pl.'s Mot. to Certify Class, Decl. of Aguirre
¶ 2; Doc. 22-2, Ex. 2 to Pl.'s Mot. to Certify Class, Decl. of Jorge A. Fernandez
¶ 2; Doc. 22-3, Ex. 3 to Pl.'s Mot. to Certify Class, Decl. of Joventino Machado
¶¶ 4, 13.  As of the date of this memorandum and recommendation, there are two
other opt-ins to this action, but they have not submitted declarations stating
that they were delivery drivers.

[10]    See Doc. 22-1, Ex. 1 to Pl.'s Mot. to Certify Class, Decl. of Aguirre
¶ 5; Doc. 22-2, Ex. 2 to Pl.'s Mot. to Certify Class, Decl. of Jorge A. Fernandez
¶ 4; Doc. 22-3, Ex. 3 to Pl.'s Mot. to Certify Class, Decl. of Joventino Machado
¶ 4.

[11]    See Doc. 22-1, Ex. 1 to Pl.'s Mot. to Certify Class, Decl. of Aguirre
¶ 5; Doc. 22-2, Ex. 2 to Pl.'s Mot. to Certify Class, Decl. of Jorge A. Fernandez
¶ 4; Doc. 22-3, Ex. 3 to Pl.'s Mot. to Certify Class, Decl. of Joventino Machado
¶ 4.

[12]    See Doc. 22-1, Ex. 1 to Pl.'s Mot. to Certify Class, Decl. of Aguirre
¶ 8 (averring that Defendants' pay policy changed about a year earlier); Doc. 22-
2, Ex. 2 to Pl.'s Mot. to Certify Class, Decl. of Jorge A. Fernandez ¶ 5; Doc.
22-3, Ex. 3 to Pl.'s Mot. to Certify Class, Decl. of Joventino Machado ¶ 6.  In
Defendants' response, Defendant states that its pay policy changed in February
2016.  See Doc. 27, Def.'s Resp. to Pl.'s Mot. to Certify Class p. 8.

salary and five percent of the ice cream-sales collections on their routes.[13]  Once Tastee Kreme changed its policy, the delivery drivers began to be paid at an hourly rate plus a percentage of the ice cream-sales collections.[14]  This percentage was usually set at five percent but could be higher if the delivery driver had more experience.[15]

## B.  **Procedural Background**

Plaintiff filed his complaint on August 26, 2016, alleging willful violations of the FLSA.[16]  Four other putative class members have opted into the lawsuit as of the date of this opinion.[17]  Plaintiff filed an amended complaint on October 11, 2016.[18]

Plaintiff filed the pending motion to certify class on December 20, 2016, seeking to certify the following class: "All current and former ice cream delivery drivers or route drivers employed by the Defendants."[19]  Plaintiff asks the court to: (1) conditionally certify the proposed class; (2) order Defendants to

---

[13]     See Doc. 22-1, Ex. 1 to Pl.'s Mot. to Certify Class, Decl. of Aguirre ¶¶ 9-10; Doc. 22-2, Ex. 2 to Pl.'s Mot. to Certify Class, Decl. of Jorge A. Fernandez ¶¶ 5-7; Doc. 22-3, Ex. 3 to Pl.'s Mot. to Certify Class, Decl. of Joventino Machado ¶¶ 9, 11.

[14]     See Doc. 22-1, Ex. 1 to Pl.'s Mot. to Certify Class, Decl. of Aguirre ¶ 9.

[15]     See id.

[16]     See Doc. 1, Pl.'s Compl.

[17]     See Docs. 3-5, 35, Notices of Consent.

[18]     See Doc. 14, Pl.'s 1st Am. Compl.

[19]     See Doc. 22, Pl.'s Mot. to Certify Class p. 1.

provide contact and personal information for all putative class members; (3) authorize notice and a reminder notice to potential class members by the requested means;[20] (4) authorize electronic signature for the return of consent forms; (5) give Plaintiff a sixty-day notice period; and (6) prevent Defendants from communicating with delivery drivers about the merits of the lawsuit.[21]

Defendants responded to Plaintiff's motion to certify class and filed objections to Plaintiff's proposed notice on January 10, 2017.[22]

## II.  Legal Standard

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours.  29 U.S.C. § 207(a).  It allows employees to bring an action against their employers for violation of its hour and wage provisions.  <u>See</u> 29 U.S.C. §§ 215-216.  An employee may bring this action against his employer on "behalf of himself . . . and other employees similarly situated.  No employee shall be a party plaintiff to any such an action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such

---

[20]    This includes notification by email, mail, text message, paycheck envelopes, posting at job sites and by allowing Plaintiff to hire a third party class-action company, if necessary.  <u>See</u> <u>id.</u> pp. 10-13.

[21]    <u>See</u> <u>id.</u> pp. 10-15.

[22]    <u>See</u> Doc. 27, Defs.' Resp. to Pl.'s Mot. to Certify Class; Doc. 28, Defs.' Objs.

action is brought." 29 U.S.C. § 216(b). Courts have the authority to implement the representative action process by facilitating notice to potential plaintiffs, in other words, to persons alleged to be "similarly situated" to the named plaintiff(s). <u>Hoffman-La Roche, Inc. v. Sperling</u>, 493 U.S. 165, 171-74 (1989).

In the Fifth Circuit, the determination of whether plaintiffs are similarly situated is generally made by using one of two analyses: (1) the two-step analysis described in <u>Lusardi v. Xerox Corp.</u>, 118 F.R.D. 351, 359 (D.N.J. 1987); or (2) the "spurious class action" analysis described in <u>Shushan v. Univ. of Colo.</u>, 132 F.R.D. 263 (D. Colo. 1990). <u>See</u> <u>Mooney v. Aramco Servs. Co.</u>, 54 F.3d 1207, 1216 (5th Cir. 1995) (expressly declining to decide which of the two analyses is appropriate).[23]

Under the <u>Lusardi</u> approach, the court first "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." <u>Acevedo v. Allsup's Convenience Stores, Inc.</u>, 600 F.3d 516, 519 (5th Cir. 2010) (citing <u>Mooney</u>, 54 F.3d at 1213-14). The court makes this determination by using a fairly lenient standard, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." <u>Mooney</u>, 54 F.3d at 1214 & n.8. If the court determines

_____

[23]    <u>Mooney</u> was an action under the Age Discrimination in Employment Act ("ADEA"), but it is informative here because the ADEA explicitly incorporates Section 216(b) of the FLSA to also provide for an "opt-in" class action procedure for similarly-situated employees. <u>See</u> <u>Mooney</u>, 54 F.3d at 1212.

that the employees are similarly situated, then notice is sent and new plaintiffs may "opt in" to the lawsuit.  <u>Acevedo</u>, 600 F.3d at 519 (citing <u>Mooney</u>, 54 F.3d at 1214).  Next, once discovery has largely been completed and, thus, more information on the case made available, the court makes a final determination on whether the plaintiffs are similarly situated and whether they can proceed together in a single action.  <u>Id.</u>

According to the Fifth Circuit, the <u>Shushan</u> approach, known as the "spurious class action" analysis, is similar to the class certification procedure used under Federal Rule of Civil Procedure 23 ("Rule 23"):

> <u>Shushan</u> espouses the view that [29 U.S.C. § 216(b) ("Section 216(b)")] merely breathes new life into the so-called "spurious" class action procedure previously eliminated from [Rule 23].  Building on this foundation, the court determined that Congress did not intend to create a completely separate class action structure for the FLSA . . . context, but merely desired to limit the availability of Rule 23 class action relief under . . . [the FLSA].  In application, the court determined that Congress intended the "similarly situated" inquiry to be coextensive with Rule 23 class certification.  In other words, the court looks at "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified.  Under this methodology, the primary distinction between a . . . [FLSA] representative action and a [Rule 23] class action is that persons who do not elect to opt-in to the . . . [FLSA] representative action are not bound by its results.  In contrast, Rule 23 class members become party to the litigation through no action of their own, and are bound by its results.

<u>Mooney</u>, 54 F.3d at 1214.

The Fifth Circuit has not ruled which method the courts should

use to determine whether plaintiffs are sufficiently similarly situated to advance their claims together in a single action under Section 216(b). <u>Acevedo</u>, 600 F.3d at 518-19. Although it has stated that not all class action standards are applicable to Section 216(b) actions, the court has explicitly left open the question of whether the <u>Lusardi</u> approach, the <u>Shushan</u> approach, or a third approach should be used in determining whether employees' claims are sufficiently similar to support the maintenance of a representative action. <u>Id.</u> (citing <u>Mooney</u>, 54 F.3d at 1216; <u>LaChapelle v. Owens-Ill., Inc.</u>, 513 F.2d 286, 288 (5th Cir. 1975)).

However, most courts in this district follow the <u>Lusardi</u> approach in suits brought under Section 216(b). <u>See, e.g., Tolentino v. C & J Spec-Rent Servs., Inc.</u>, 716 F. Supp.2d 642, 646 (S.D. Tex. 2010) (collecting cases). The <u>Lusardi</u> approach is consistent with Fifth Circuit dicta stating that the two-step approach is the typical manner in which these collective actions proceed. <u>Sandoz v. Cingular Wireless LLC</u>, 553 F.3d 913, 915 n.2 (5th Cir. 2008). The Fifth Circuit has also stated that "[t]here is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by [Section 216(b)]," in other words, the "opt out" procedure for class members under Rule 23 as opposed to the "opt in" procedure under Section 216(b). <u>LaChapelle</u>, 513 F.2d at 288; <u>see also Donovan v. Univ. of Tex. at El Paso</u>, 643 F.2d 1201, 1206 (5th Cir. 1981) ("The FLSA

procedure, in effect, constitutes a congressionally developed alternative to the [Rule 23] procedures."). This court, therefore, will analyze Plaintiff's claims using the <u>Lusardi</u> method.

The present case is at the "notice stage" of the <u>Lusardi</u> analysis. At this stage, the court's decision is "made using a fairly lenient standard;" a plaintiff need only make a minimum showing to guide the court's determination whether to issue notice to potential class members. <u>Mooney</u>, 54 F.3d at 1214.

In the absence of Fifth Circuit guidance on the appropriate test to use at the notice stage of the <u>Lusardi</u> analysis, courts are split on the appropriate elements to consider in determining whether to grant conditional certification. Some courts use three elements, requiring the plaintiff to show that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. <u>See, e.g., Cantu v. Vitol, Inc.</u>, No. H-09-0576, 2009 WL 5195918, at *4 (S.D. Tex. Dec. 21, 2009) (unpublished); <u>Tolentino</u>, 716 F. Supp.2d at 653. Other courts, however, have rejected the third, non-statutory element. <u>See, e.g., Jones v. Cretic Energy Servs., LLC</u>, 149 F. Supp.3d 761, 768 (S.D. Tex. 2015); <u>Dreyer v. Baker Hughes Oilfield Operations, Inc.</u>, No. H-08-1212, 2008 WL 5204149, *3 (S.D. Tex. Dec. 11, 2008) (unpublished); <u>Heckler v. DK</u>

<u>Funding, LLC</u>, 502 F. Supp.2d 777, 780 (N.D. Ill. 2007).

This court is persuaded by the latter group of cases that have rejected the third element, as it is not statutorily required. <u>See</u> <u>Jones</u>, 149 F. Supp.3d at 762. This reasoning is consistent with the instruction from the Supreme Court that the FLSA be liberally construed to carry out its purposes. <u>Id.</u> (citing <u>Tony & Susan</u> <u>Alamo Found. v. Sec'y of Labor</u>, 471 U.S. 290, 296 (1985)). Therefore, the court finds that it is enough for Plaintiff to present evidence that there may be other aggrieved individuals who should be noticed without requiring evidence that those individuals actually want to join the lawsuit.

### III. Analysis

The court will first address Defendants' challenges to Plaintiff's class certification and then will consider Defendants' objections to Plaintiff's proposed notice and consent.

### A. <u>Class Certification</u>

Here, Plaintiff asserts that Defendants willfully violated the FLSA by denying Plaintiff and other delivery drivers overtime pay. Defendants urge the court to reject Plaintiff's request for conditional class certification.

### 1. Defendants' Objections to Plaintiff's Declarations

Defendants seek to strike Plaintiff's evidence, arguing that the declarations submitted with the motion to certify class contain misstatements and incorrect facts, rely on inadmissible evidence,

contain conclusory and unsupported statements, lack personal knowledge, and are misleading.

When the case is in the notice stage, the court decides whether or not to certify a class generally based on the submitted pleadings and affidavits. Mooney, 54 F.3d at 1213-14. "The remedial nature of the FLSA and [29 U.S.C.] § 216 militate strongly in favor of allowing cases to proceed collectively." Tolentino, 716 F. Supp.2d at 647 (quoting Albanil v. Coast 2 Coast, Inc., No. H-08-486, 2008 WL 4937565, at *3 (S.D. Tex. Nov. 17, 2008)(unpublished)). In support of this motion, Plaintiff submitted three declarations, including his own, from delivery drivers who worked for Defendants (collectively, "Declarants").

District courts in the Fifth Circuit have held that at the notice stage, the evidence presented by the plaintiff does not have to be evidence that would be admissible at trial. See, e.g., Lee v. Metrocare Servs., 980 F. Supp.2d 754, 761-62 (N.D. Tex. 2013)(gathering cases); Castillo v. Alkire Subway, LP, H-08-CV-2658, 2009 WL 9529354, *4-5 (S.D. Tex. Apr. 30, 2009)(unpublished); McKnight v. D. Hous., Inc., 756 F. Supp.2d 794, 804-05 (S.D. Tex. 2010). The court finds this persuasive because, unlike at the summary judgment stage, at the notice stage the parties have not conducted discovery, and the court is not ruling on the merits. See Castillo, 2009 WL 9529354, at *4-5.

In order to be competent evidence, declarations must be based

11

on personal knowledge. <u>Lee</u>, 980 F. Supp.2d at 762 (gathering cases). Courts have held that it is reasonable to find at the notice stage of the litigation that an employee has personal knowledge of his work experiences. See, <u>e.g</u>, <u>id.</u> at 763-64 ("the Court finds that it is reasonable to infer at this [notice] stage that Lee and Albert had personal knowledge of the employment conditions of other Service Coordinators based on their own observations and experiences during their employment.")(citations omitted).

In this case, Declarants worked for Defendants for at least six months, which is an adequate amount of time to gain personal knowledge about their work environment. In the declarations, Declarants demonstrate their personal knowledge by averring that they learned this information through working for Tastee Kreme and speaking with others working there. In addition, all three declarations disclosed that their information was based on personal knowledge. District courts in Texas have held that this is enough to establish that a declaration at this stage of the case is based on personal knowledge. <u>See, e.g., id.</u> at 762; <u>Perez v. Alcoa Fujikura, Ltd.</u>, 969 F. Supp. 991, 998 (W.D. Tex. 1997). Therefore, the court overrules Defendants' objection that the declarations were not based on personal knowledge.

Defendants next argue that the declarations contain misstatements and are misleading. Specifically, Defendants

challenge the Declarants' characterization of their job
responsibilities and title. Defendants contend that Declarants are
actually sales merchandisers who sell ice cream products to the
customers or their delivery routes, and point to the fact that
their commissions come from these sales of ice cream. In support
of this argument, Defendants submitted an affidavit from Karami
stating that Declarants were employed by Tastee Kreme as sales
merchandisers.

The court finds that to the extent there is a dispute over the
job title of the opt-ins, it is better saved for a later stage of
the litigation when the court examines whether any position is
exempt from the overtime provisions of the FLSA. Exemption
defenses "are merits-based defenses to FLSA claims that courts in
this district typically hold to be irrelevant at this initial,
notice stage of the case." Jones, 149 F. Supp.3d at 774 (providing
examples of other cases supporting this same proposition). Even if
an exemption defense may apply to the case, that is ineffective to
prevent conditional certification of a class. Dreyer, 2008 WL
5204149, at *3 (citing Foraker v. Highpoint Sw., Servs., LP, No. H-
06-1856, 2006 WL 2585047, at *4 & n. 16 (S.D. Tex. Sept. 7, 2006))
(unpublished); see also Albanil, 2008 WL 489765, at *7
("defendants' assertion of an exemption, alone, is an insufficient
basis for denying conditional certification and notice").

The second stage of the Lusardi analysis is "typically

13

precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete . . . [a]t this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." Mooney, 54 F.3d at 1214. Exemption defenses are properly considered in the second stage of the Lusardi analysis. Falcon v. Starbucks Corp., 580 F. Supp.2d 528, 534 (S.D. Tex. 2008). Therefore, Defendants' objections are overruled.

Defendants also contend that the declarations are conclusory and unsupported. In Songer v. Dillon Resources, 569 F. Supp.2d 703, 707 (N.D. Tex. 2008), the court found that the plaintiffs' allegations were not substantial because they were not supported by facts that showed the basis for their knowledge. However, in this case, the declarations contain substantial details about their roles as delivery drivers, their job responsibilities, how they were paid, and how they performed their jobs, and the factual basis for their personal knowledge of these facts. For example, Declarants learned of Defendants' failure to pay overtime by personally talking to other delivery drivers. Therefore Defendants' objection that the declarations are conclusory and unsupported is overruled.

**2. Ruiz**

Defendants challenge the consent to joint a collective action filed by Emilio Ruiz, arguing that he was paid overtime and a had

a different job title from the other opt-in plaintiffs.

The court finds that this argument is premature. At this stage, the court is not deciding the merits of each individual member of the class and whether he or she is properly a part of the certified class. That argument is more properly considered at a later stage in the litigation.

### 3. Plaintiff's Burden

In order to obtain a class certification, Plaintiff must show "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." Mooney, 54 F.3d at 1214 & n. 8. Plaintiff must provide evidence to establish a reasonable belief that aggrieved individuals exist and that the aggrieved individuals are similarly situated. Cantu, 2009 WL 5195918, at *4.

Defendants argue that Plaintiff did not meet his burden because Plaintiff has not shown that the putative class members are similarly situated and that there are other aggrieved individuals who want to join the suit. Defendants reiterate that Plaintiff's evidence is improper and argue that Plaintiff's attorneys have acted improperly by contacting potential class members to join in this lawsuit.

To meet his burden, Plaintiff must first show that there are other potential class members. In this case, the declarations provide substantial allegations that there are others who wish to

join the class as required under the <u>Lusardi</u> analysis. <u>See</u> <u>Mooney</u>, 54 F.3d at 1214 & n.8; <u>Tolentino</u>, 716 F. Supp.2d at 653 (finding that two declarations, a declaration from the plaintiff, and the complaint "sufficiently state[d] a claim against Defendant" so that "Plaintiffs [] satisfied their burden"). Declarants put forth detailed information about the nature of their positions as delivery drivers for Defendants. Also, Declarants averred that they often worked forty hours a week and were never paid overtime. Declarants additionally aver that other delivery drivers were subject to the same policies. Five individuals, including Plaintiff have opted into this lawsuit. The court finds that these facts demonstrate the existence of aggrieved individuals who were harmed by Defendants' policy to exempt them from overtime pay.

The second element Plaintiff must establish in meeting his burden is that these aggrieved individuals are similarly situated. The sworn statements outline that Declarants, including Plaintiff, held the same position, worked similar hours, had the same job responsibilities, and were paid a salary and commission with no overtime. Through this evidence, Plaintiff has shown that putative class members are similarly situated, as they held the same position were paid a salary with no overtime compensation.

Based on the foregoing, the court finds Plaintiff has provided substantial allegations demonstrating that the putative class members were victims of a uniform policy or plan. Therefore,

Plaintiff met his burden under the <u>Lusardi</u> analysis.

**4.  Scope of the Certified Class**

Defendants challenge the scope of Plaintiff's proposed class, arguing that Plaintiff and the opt-ins are not delivery drivers, but are sales merchandisers.  As addressed above, the court finds that this dispute over job titles and responsibilities is better left for a later stage of the case, after discovery has been conducted.  Plaintiff responds that he would have no objection to including "sales merchandisers" in the proposed class notice.[24]  The court finds that this is improper, as Plaintiff has only provided evidence that he and the opt-ins are delivery drivers.  Therefore, the court finds that the scope of the class should be limited to ice cream delivery and route drivers.

Defendants' pay policy changed in February 2016, a fact which Plaintiff does not dispute, as Plaintiff submitted evidence that Defendants began keeping track of the employees' time and paying them on an hourly basis beginning in January or February 2016.  However, in Plaintiff's declaration, he avers that, even after he was paid on an hourly basis, he still was not paid overtime.[25]

In <u>Walker v. Honghua America, LLC</u>, 870 F. Supp.2d 462, 472-73 (S.D. Tex. 2012), the court held that because there was a policy

---

[24]    <u>See</u> Doc. 31, Pl.'s Resp. to Defs.' Obj. to Pl.'s Proposed Notice, p. 2.

[25]    <u>See</u> Doc. 22-1, Ex. 1 to Pl.'s Mot. to Certify Class, Decl. of Aguirre ¶ 10 ("I was never paid overtime for all the hours I worked in excess of 40 hours a week since 2008.").

change on January 12, 2012, those employees who were employed after that date were not similarly situated to those employed before and therefore they were not victims of a single decision, policy, or plan "regardless of whether FLSA violations continued to occur after that time," and, therefore, "the class period must end on [January 12, 2012]." However, the court finds <u>Walker</u> distinguishable from the facts in this case because, regardless of the change in the way the delivery drivers were paid, if they were not paid overtime, then they are similarly situated. Therefore, the court will allow class claims for the alleged failure to pay overtime after the delivery drivers were paid on an hourly basis.

**B. <u>Notice</u>**

In addition to requesting class certification, Plaintiff also asks the court to judicially approve and order notice be sent to putative class members. Defendants make a variety of objections to the form, content, and methods of Plaintiff's proposed notice.

**1. Time Frame**

Defendants argue that the proposed three-year period for individuals who worked at Tastee Kreme is improper because it implies that Defendants' conduct was willful. Plaintiff contends that a three-year limitations period is proper and that it should be calculated back from the date that notice is approved by the court. Plaintiff claims that the three-year period does not imply a finding of willfulness and courts have discretion to allow a

three-year notice period.

"Based on the statute of limitations, courts have recognized that class certification is appropriately limited to workers employed by the defendant up to three years before notice is approved by the court." <u>Tolentino</u>, 716 F. Supp.2d at 654 (quoting <u>Quintanilla v. A & R Demolitina, Inc.</u>, No. Civ.A. H-04-1965, 2005 WL 2095104, at *16 (S.D. Tex. Aug. 30, 2005)(unpublished); <u>Watson v. Travis Software Corp.</u>, No. H-07-4104, 2008 WL 5068806, at *8 (S.D. Tex. Nov. 21, 2008)). "The well-established precedent of the Southern District of Texas indicates that, where a plaintiff alleges a willful FLSA violation, notice is proper for potential class members employed by the defendant within the full three-year period; FLSA plaintiffs are not required to prove willfulness prior to discovery." <u>Walker</u>, 870 F. Supp.2d at 472 (citing cases).

Because Plaintiff has alleged willfulness in this case, the court finds that a three-year notice period commencing on the date that this memorandum and recommendation is adopted is appropriate.

As to Defendants' objections that the proposed notice should make the time period clear to potential opt-ins, the court agrees. Plaintiff is ordered to include the relevant time frame for opt-ins, as defined by the court, in its notice.

### 2. Form and Content of Proposed Notice

In their objections, Defendants continue to challenge the scope of Plaintiff's class, namely, the job title held by Plaintiff

and the other opt-ins. The court reiterates that the class is limited to ice cream delivery or route drivers; the notice should only be addressed to ice cream delivery or route drivers, not sales merchandisers.

Defendants argue that the sentence in Plaintiff's proposed notice regarding retaliation, which states, "[i]f you suspect any retaliation, call the head attorney below at (713)223-8855 extension 2002 immediately and ask to speak with Trang Tran," should be removed because Plaintiff is using this in an attempt to solicit additional opt-in plaintiffs. Plaintiff argues that the potential opt-ins should be allowed to know about their rights. The court agrees with Plaintiff, and declines to order Plaintiff to remove this language from the proposed notice.

Defendants object to the length of the notice period, arguing that opt-ins should only have thirty days to return their forms, not sixty days. However, the court finds that this objection unwarranted, as courts routinely approve sixty-day notice periods, and Defendants have not shown any compelling reason to shorten this time period. In the interest of justice, the court finds that a sixty-day opt-in period is warranted in this case.

### 3. Content of Proposed Consent

Along with the proposed notice, Plaintiff submits a proposed consent form. Defendants object to it, claiming that it contains inaccurate information. First, Defendants argue it is defective

because it does not include the time frame for which claims may be brought in the lawsuit. The court agrees, and orders Plaintiff to change "during the time that I was employed by the Company" to the time frame specified by the court for the class.

Defendants also contend that the statement that opt-ins' requested personal information will be kept confidential is inaccurate because the consents will be filed with the court and provided to Defendants' counsel. The court agrees, and this statement should be removed from the proposed consent.

The proposed consent asks the opt-ins to disclose the positions held with Defendants, and Defendants object to the inclusion of this information because, in their view, only sales merchandisers should be certified as a class. As the court has addressed, this lawsuit is limited to ice cream delivery and route drivers, and does not include sales merchandisers. The court finds that it is relevant to ask potential opt-ins for their positions held with Tastee Kreme in order to help determine who may or may not be similarly situated in the opt-in class. Therefore, Defendants' objection is overruled.

Defendants also object to the request for information about locations worked for Tastee Kreme, arguing that this lawsuit is limited to the Houston location, because that is the only location where Karami works. The court reminds the parties that the lawsuit is limited to Tastee Kreme #2, Inc., and if this company has

potential class members outside the Houston area, those persons are included in the class.  However, inclusion of this information may be helpful to determine where potential opt-ins are working.  Plaintiff may keep this information in the proposed notice.

**4.  Method of Notice**

Defendants challenge some of Plaintiff's proposed methods of notice, calling them "extreme."

**a.  Time Frame**

Defendants request that the time frame to provide the demanded information to Plaintiff should be extended from ten days to twenty-one days, arguing that the gathering of employee information is burdensome.  The court will allow Defendants to have a fourteen-day period to gather information.  The court agrees that the scope of information requested, namely, birth dates, social security numbers, and driver's license numbers, is unnecessary.  Therefore, Defendants are ordered to provide, within fourteen days of the adopting of this memorandum and recommendation, the names, addresses, phone numbers, email addresses, and dates of employment of potential class members to Plaintiff.

**b.  Notice by Text Message**

Defendants challenge Plaintiff's request that notice be conducted via text message, arguing that it is inappropriate, confusing, and misleading.  Plaintiff argues that text message notice is necessary in this case because of the nature of the case

and wide use of text messages.  The court acknowledges that some courts outside this district have authorized text message notice to potential opt-in plaintiffs in FLSA cases.  <u>See</u>, <u>e.g.</u>, <u>Bhumitharnarn v. 22 Noodle Market Corp.</u>, No. 14-CV-2625(RJS), 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015)(unpublished)(giving the plaintiff permission to notice potential opt-ins via text message, reasoning that the restaurant industry had high turnover and text messaging was the defendant's favored method of communication); <u>Irvine v. Destination Wild Dunes Mgmt., Inc.</u>, 132 F. Supp.3d 707, 711 (D.S.C. 2015)(finding text message notice to be warranted, stating that it "has become a much more mobile society with one's . . . cell phone number serving as the most consistent and reliable method of communication.").

Despite this case law, the court finds that notice by text message is not warranted by the present circumstances.  While the court acknowledges the pervasiveness of text messages in society, the court finds that text messaging could be misleading.  There is a risk that, unlike an email or letter, a text message would be incomplete, not provide a potential opt-in a full picture of the nature of the lawsuit or their rights and would not convey the seriousness of the communication.  Therefore, the court sustains Defendants' objection and declines to allow text message notice to potential opt-in plaintiffs.

### c.  Notice in the Workplace

Defendants objects to notice being posted in the workplace because: (1) the request that notice be posted at "all jobsites" is too vague; (2) it would cause people who are not potential class members improperly join the lawsuit; and (3) the members of the class work primarily outside of the workplace.

"Posting notice in a workplace is often used to inform employees of their rights in labor disputes, and has been approved as an appropriate form of notice in FLSA cases." <u>Garcia v. TWC Admin., LLC</u>, No. SA:14-CV-985-DAE, 2015 WL 1737932, at *5 (W.D. Tex. Apr. 16, 2015)(citations omitted); <u>see also</u> <u>Garcia v. Pancho Villa's of Huntington Village, Inc.</u>, 678 F. Supp.2d 89, 96 (E.D. N.Y. 2010)(noting that posting notice in the workplace is "a practice has been routinely approved in other cases").

The court finds that Plaintiff may post notice in the Tastee Kreme #2 workplace(s). This includes warehouses where the trucks are stored when they are not out for delivery, where the ice cream products are stored before being loaded on trucks for delivery and where the trucks are washed.

### d. Notice by Paychecks or Route Lists

Plaintiff concedes that notice by paychecks could be burdensome for Defendants and offers to provide Defendants with copies of the notice to be given to employees when the paychecks are distributed. In the alternative, Plaintiff suggests that notice be distributed by route lists instead. However, as the

24

court approves notice by email, mail, and by posting notices in the workplace, the court finds that inclusion of the proposed notice with the route lists or paychecks to be unnecessary and unduly burdensome for Defendants.

### e. Electronic Signature

Plaintiff requests the court allow the opt-in plaintiffs to electronically sign their consent forms.  Defendants argue that allowing for electronic signature is "ineffectual, promotes fraudulent conduct, and is not narrowly tailored" and that it "will unnecessarily prejudice Defendants."[26]  Plaintiff responded that electronic signatures have legal effect under Texas and Federal law, citing Dyson v. Stuart Petroleum Testers, Inc., 308 F.R.D. 510 (W.D. Tex. 2015).

In Dyson, the court allowed for electronic signature for the return of consent forms in a FLSA class action.  308 F.R.D. at 517.  The court cited a few different reasons for allowing it, including that: (1) the FLSA does not require a signature, only that consent be in writing; (2) under the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001(a)(1), a "signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form"; (3) under Texas' version of the Uniform Electronic Transactions Act, Tex. Bus. & Com. Code § 322.007(a) &

---

[26]     See Doc. 28, Defs.' Objs. to Pl.'s Proposed Notice p. 7.

(d), a "signature may not be denied legal effect or enforceability solely because it is in electronic form" and "[i]f a law requires a signature, an electronic signature satisfies the law"; and (4) looked to other cases where courts allowed electronic signatures for consent forms in FLSA. <u>Dyson</u>, 308 F.R.D. at 517-18.

Here, the court is persuaded by the reasons cited in <u>Dyson</u> and overrules Defendants' objection to electronic signatures.

### f. Multiple Notices

Plaintiff asks the court for permission to send a reminder notice. Defendants challenge this request, arguing that it is unnecessary and will increase the costs of the lawsuit, which may be passed on to them.

"District courts are split as to whether reminder notices to potential class members are proper in FLSA actions" but "they have denied requests for reminder notices . . . upon finding them unnecessary." <u>Jones</u>, 149 F. Supp.3d at 776. In its motion to certify class, Plaintiff mentioned that courts have authorized more than it requests in cases where there are low wage, immigrant workers. However, the court finds that Plaintiff has not provided a compelling reason why a reminder notice is necessary in this case. Therefore, Defendant's objection to the reminder notice is sustained.

### 5. Limitation on Defendants' Communications

Defendants challenge Plaintiff's request that the court

"[p]rohibit Defendants, including Defendants' agents, from communicating directly or indirectly with any current or former Delivery Driver about any matters which touch or concern the settlement of any outstanding wage claims, or any other matters related to this suit during the opt-in period."[27]

Due to the nature of FLSA collective actions, courts "have broad authority to govern the conduct of both counsel and parties . . . includ[ing] the power to restrict communication between a party and absent class members." <u>Pacheco v. Aldeeb</u>, 127 F. Supp.3d 694, 697 (W.D. Tex. 2015)(citations omitted). However, the court does not have unlimited authority. <u>Id.</u> The Supreme Court has said that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89, 101 (1981).

The following four factors are weighed by courts to decide if there is good cause to restrict communications that may discourage parties from joining the collective action: "the severability and likelihood of perceived harm, the precision with which the order is drawn, the availability of a less onerous alternative, and the duration of the order." <u>Pacheco</u>, 127 F. Supp.3d at 698 (citing <u>Belt v. Emcare, Inc.</u>, 299 F. Supp.2d 664, 668 (E.D. Tex. 2003)).

---

[27]    <u>See</u> Doc. 22, Pl.'s Mot. to Certify Class p. 15.

Courts have limited communications "with absent class members where the communications were misleading, coercive, or an improper attempt to . . . encourag[e] class members not to join the suit." Pacheco, 127 F. Supp.3d at 698 (quoting Belt, 299 F. Supp.2d at 667-68).

Here, Plaintiff has not provided evidence showing that there have been any actions by Defendant to discourage potential opt-ins from joining the lawsuit. The court finds that Plaintiff has not shown a need to limit communications between Defendants and potential opt-ins in this action. However, Plaintiff may return to the court if it learns that Defendants are discouraging potential opt-ins from joining the lawsuit.

### IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's motion to certify class be **GRANTED.** The court **RECOMMENDS** that this matter be certified as a collective action under 29 U.S.C. § 216(b) with respect to the following class:

> All current and former route drivers or ice cream delivery drivers who were employed by Tastee Kreme #2 and Vahid Karami who were not paid appropriate overtime wages three years from the date that the court authorizes notice.

If this Memorandum and Recommendation is adopted, Defendants shall provide Plaintiff, within fourteen days of the recommendation's adoption, with a list of verified contact information, including names, last known addresses, phone numbers,

email addresses, and dates of employment for ice cream delivery or route drivers who were employed by Defendants within the last three years.

Plaintiff shall have fourteen days from the receipt of this information to mail the proposed notice, amended as discussed above, to the potential class members.  The opt-in period shall be sixty days from the date the notice is mailed.  Plaintiff may also post notice in the warehouses where the trucks are stored when they are not out for delivery, where the ice cream products are stored before being loaded on trucks for delivery, and where the trucks are washed.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 13th day of April, 2017.

U.S. MAGISTRATE JUDGE